```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES, et al., ex rel.  : CIVIL ACTION
JEAN BRASHER,                   : NO. 13-05745
                                :
     Plaintiff,                 :
                                :
v.                              :
                                :
PENTEC HEALTH, INC.,            :
                                :
     Defendant.                 :
```

**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                    October 16, 2018

## I.  INTRODUCTION

Before the Court are two related and recurring questions, often raised but rarely saluted.  First, how long may the Government take to investigate a False Claims Act qui tam claim before it decides whether or not to intervene?  And second, how long should the matter remain under seal while the Government investigates?

In this False Claims Act qui tam action filed under seal five years ago, the Government has requested the Court to reconsider its decision to deny an eleventh extension to the period of the seal.  The Act allows a qui tam plaintiff, the

relator, to file a complaint under seal and for the case to be kept sealed initially for up to sixty days to allow the government to evaluate whether it will elect to intervene. The sixty-day period under seal may be extended for good cause shown,[1] including to prevent retaliation against the relator or to prevent unfair prejudice against the defendant. However, the Government failed to demonstrate good cause in its moving papers requesting an eleventh extension, therefore the Court lifted the seal on the case and required the Government to make an election on intervention within thirty days.

The Government has moved for reconsideration, and has sought another extension on top. The Court held a hearing on October 11, 2018, at which time the relator and the defendant joined the Government's motion.[2] But the arguments still fail to demonstrate good cause. Therefore, the Court will deny the request for reconsideration of the Court's order lifting the seal, and will require the Government to make an intervention

---

[1] Under the Local Rules, although a document, including a complaint, may be initially filed under seal, it may only be permanently kept under seal by order of the court. See Local R. Civ. P. 5.1.5.

[2] The Court had previously granted the Government's request to disclose the Complaint to the defendant. ECF No. 38.

decision within thirty days of learning of the Court's order lifting the seal.[3]

## II. BACKGROUND

This case was initiated when Jean Brasher, the relator, filed a complaint under seal on October 1, 2013. ECF No. 1. Brasher alleges that Pentec Health defrauded and/or conspired to defraud government health insurance programs. Id.

### A. The Tenth Request for an Extension

At the request of the Government, the Court has issued orders that have resulted in ten extensions to the seal and evaluation period. See ECF Nos. 4, 7, 10, 14, 19, 23, 25, 27, 30, 36. The last of these ten extensions was granted following a hearing held on March 20, 2018.

At the March 20 hearing on the tenth extension request, the Government outlined the recent activity in the case. A criminal investigation into Pentec's activities was closed in November 2017, with no charges brought against Pentec. At that time, the civil investigators resumed their work, such work being on hold while the criminal investigation was pending.[4] Between November 2017 and February 2018, the Government tied up

---
[3] The Government has represented that it did not learn of the Order lifting the seal until October 5, 2018. See infra note 5.

[4] At the Government's request, the case was placed in suspense for nearly sixteen months from June 27, 2016 to October 17, 2017 to allow it to complete the criminal investigation.

various matters, including conducting interviews with individuals with knowledge of Pentec's practices. In late February 2018, the Government met with Pentec's attorneys to present the Government's theory of the case regarding False Claims Act claims and kickback claims. In light of those allegations, Pentec was preparing a response for presentation to the Government in early May 2018. Pentec had also provided documents to the Government in response to civil investigative demands (nineteen interrogatories and twenty document requests).

At the March 20 hearing, the Government argued that good cause existed for its requested extension. The Government argued it needed more time to complete its intervention evaluation, Brasher's anonymity needed protecting, and Pentec should be given time to respond while not being prejudiced by potentially untruthful allegations being made public.

The Court granted the Government's tenth request (ECF No. 36) but explained at the March 20 hearing that it had concerns about the secrecy and pendency of the case, including concerns about the lack of meaningful deadlines, and that the need for transparency and accountability were not being met by the repeated extensions of the seal and evaluation period.

### B. The Eleventh Request for an Extension

#### 1. The Government's Arguments in Support of an Extension

On July 17, 2018, the Government asked for yet another extension. ECF No. 39. The Government sought an extension until either mid or late October 2018 (the moving papers were inconsistent).

In the Government's moving papers, the Government summarized its argument as needing to have meetings and follow-up meetings with Pentec's attorneys, and to make an intervention decision and to pursue settlement options.[5] ECF No. 39 at 7.

#### 2. The Court Denies the Eleventh Request for an Extension

Given the Court's familiarity with the case, it decided the Government's eleventh request on the papers. ECF No. 41. Before reaching a decision, the Court reviewed the filings in the case, in particular: 1) the Complaint; 2) the tenth extension request; 3) the transcript of the motion hearing held on March 20, 2018 in relation to the tenth extension request; 4) a letter to Chambers from the Government about the coextensive nature of the seal and evaluation periods (dated March 29, 2018); and 5) the eleventh extension request. Based

---

[5] No request was made that, in the event the Court ordered the seal lifted, for the matter to be stayed pending appeal, for further notice to be given to the Government prior to unsealing the materials in the docket, or for the seal to be lifted only partially as to certain items.

on this review, the Court denied the Government's eleventh request for an extension to the seal and evaluation period, lifted the seal on all documents in the docket of the case, and required the Government to make an election within thirty days whether to intervene in the case. Id.

The Court explained that the request for an extension might appear modest on its face by seeking just three months, but the reality was that the request came five years after the outset of the litigation and after ten extensions had been granted.

The Court found that none of the reasons for the initial secrecy in False Claims qui tam actions would be served by granting the request. First, Pentec had been served with the Complaint and therefore it was already aware of the Government's interest in Pentec's alleged fraudulent activities. Second, there was no evidence that Brasher would be subjected to retaliation by Pentec. Third, there was no evidence that Pentec would suffer financial injury by lifting the seal. Against this backdrop, the Court explained that the tradition of access to the courts by the public, and the commitment to transparency and accountability would be undermined by keeping litigation involving the government out of the public eye.

The Court rehearsed that while there were extenuating circumstances supporting ten previous extensions, those

circumstances were not present now.  Finally, the Court commiserated that there was no assurance that the "just one more" extension requested by the Government would not be followed by ever more requests.

   C.   **The Motion for Reconsideration**

Due to an administrative clerical error, the Government did not become aware of the Court's September 7 Order until October 5.[6]  The Government now asks the Court to reconsider its decision and re-impose the seal on the case entirely, or at a minimum on the Government's previous extension requests.  ECF No. 46 at 1.  Furthermore, and true to form, the Government seeks yet another extension, this time to December 31, 2018, well beyond any date in October that was contemplated in the Government's eleventh extension request.  Id.

The Court held a hearing on the motion on October 11, 2018.  First, the Court heard from the Government's counsel ex parte.  Afterwards, the Court afforded counsel for Pentec and counsel for Brasher to state their positions.  Both Pentec and

---

[6]   By letter dated October 9, 2018, the Government requested the resealing of the documents in the case.  ECF No. 46.  The Court construed the letter as a motion for reconsideration under Local Rule of Civil Procedure 7.1(g).  Because the Government did not learn of the Court's Order until October 5, the Government's request for reconsideration was timely.

7

Brasher support the Government's request to extend the seal or to reseal the documents in the case.

### 1. The Government's Arguments

In its letter and at the hearing, the Government argued three points: 1) the harm to Pentec; 2) the policy behind sealing at least the extension requests; and 3) the effect on the current settlement negotiations.

First, the Government argued that unsealing the case is harmful to Pentec because the previous requests for extension refer to the prior criminal investigation of Pentec which was concluded in November 2017. Id. at 2.

Second, the Government argued that policy considerations should guide the Court to reseal its memoranda in support of its previous "extension requests" in the case. Id. The Government states that "Congress specifically provided" for filing extension requests in camera, and that the Government "routinely requests" such extension requests to remain sealed when the case is unsealed. Id. The Government also argued that traditionally such requests for extensions remain under seal, and alluded in general to "congressional intent" and case law from this District, the Third Circuit, and the Supreme Court.

Third, the Government stated that the parties are negotiating a settlement, the "allegations will affect financing of a resolution," and the settlement is now in jeopardy because

unsealing the case has put Pentec at financial risk. Id. The Government argued that potential financiers may withdraw upon learning of the previous criminal investigation.

### 2. Pentec's Arguments

Pentec explained that it had not suffered any harm yet, but it feared that the disclosure of the criminal investigation, albeit one that is closed, would result in significant negative consequences. Pentec argued that the financial health of the company was at issue, and that a "senior lender" may back out of financing Pentec if it learns that Pentec has been the subject of a criminal investigation.

### 3. Brasher's Arguments

Counsel for the relator cautioned that while Brasher herself had not suffered any harm yet, and although her counsel did not point to any specific examples, based on her counsel's experience, other relators in other cases have suffered reputational and other types of harm. Counsel for Brasher argued for a delay in any disclosure in that a relator is less likely to suffer recriminations when a False Claims case has been resolved because at that point the relator's allegations have been vindicated.

III. DISCUSSION

   A.   Law

The False Claims Act, 31 U.S.C. § 3729 et seq., was enacted in 1863 and "originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War." Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1996 (2016) (quoting United States v. Bornstein, 423 U.S. 303, 309 (1976)). The Act has been amended a number of times, "but its focus remains on those who present or directly induce the submission of false or fraudulent claims" for payment or approval by the Government.[7] Id.

The Act imposes civil liability, and a civil action may be initiated in two ways. 31 U.S.C. § 3730. First, the Government may bring suit against the alleged false claimant. Id. § 3730(a). Second, "a private person (the relator) may bring a qui tam civil action for the person and for the United States Government against the alleged false claimant, in the name of the Government."[8] Vt. Agency of Natural Res. v. United

---

[7] The Act was amended as recently as July 21, 2010. Pub. L. No. 111-203, § 1079A(c), 124 Stat. 2079.

[8] The name "qui tam" comes from the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which means "who pursues this action on our Lord the King's behalf as well as his own." Vt. Agency of Natural Res., 529 U.S. at 769 n.1.

10

States ex rel. Stevens, 529 U.S. 765, 769 (2000) (quoting § 3730(b)(1)).

When a relator initiates a False Claims Act qui tam action by filing a copy of the complaint under seal, the relator must also serve the complaint on the Government. 31 U.S.C. § 3730(b)(2). The Act requires the complaint to remain under seal for sixty days. Id. The purpose of the seal period, clearly articulated by the Senate Committee on the Judiciary, was "to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action."[9] S. Rep. No. 99-345, at 24 (1986); see also United States ex rel. Grupp v. DHL Express (USA), Inc., 742 F.3d 51, 54 (2d Cir. 2014) ("The purpose of the sealing provisions is to allow the government time to investigate the alleged false claim and to prevent qui tam plaintiffs from alerting a putative defendant to possible investigations.").

---

[9] The original 1863 version of the statute did not allow the Government to intervene and take over an action that had been filed by a relator. See United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 721 (9th Cir. 1994) (citing Act of March 2, 1863, ch. 67, 12 Stat. 696). The Act was amended in 1943 to provide the Government with a period of sixty day to investigate the claims and decide whether or not to intervene. See id. (citing Pub. L. No. 78-213, ch. 377, 57 Stat. 608 (1943)).

The Senate Committee further explained that "with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision." Id. at 24-25; see also Am. Civ. Liberties Union v. Holder, 673 F.3d 245, 250 (4th Cir. 2011) ("Because Congress recognized that some investigations might require more than 60 days, the 1986 Amendments permit the United States, 'for good cause shown,' to file a motion in camera with affidavits or other submissions to extend the seal."). Even if the Government declines to intervene while the case is under seal, the Government may "intervene at a later date upon showing good cause." 31 U.S.C. § 3730(c)(3).

The Court may order an extension of the period the case is under seal "for good cause shown." 31 U.S.C. § 3730(b)(3); see also Killingsworth, 25 F.3d at 721 (explaining that the "good cause" provision was added in the 1986 amendments to the statute). However, courts considering extension requests should be wary of the ex parte nature of such requests, and the ease by which a case can slip into a "comfortable routine" of a request followed by another request: the results can amount to significant abuses of the statutory scheme. See, e.g., United States ex rel. Martin v. Life Care Ctrs. of Am., Inc., 912 F. Supp. 2d 618, 625 (E.D. Tenn. 2012); see also United States ex rel. Costa v. Baker & Taylor, Inc., 955 F. Supp. 1188, 1190

12

(N.D. Cal. 1997) (noting "with regret" that the court's earlier extensions may have been influenced by "the effects of inertia and the lack of an opposing party"). One court has described a four-year period under seal as "border[ing] on the absurd." Martin, 912 F. Supp. 2d at 623.

When the Court lifts the seal on the case, the question of whether or not to keep the seal on any extension requests and other filings is a matter for the court's exercise of discretion. See, e.g., United States ex rel. Erickson v. Univ. of Wash. Physicians, 339 F. Supp. 2d 1124, 1126 (W.D. Wash. 2004) ("[T]he statute necessarily invests the court with authority to either maintain the filings under seal, or to make them available to the parties.").

When faced with a request to keep documents sealed, a court must "consider the interests of the public, since court records are typically expected to be open to the public." United States ex rel. Lee v. Horizon W., Inc., No. C 00-2921 SBA, 2006 WL 305966, at *2 (N.D. Cal. Feb. 8, 2006) (internal citation omitted). Indeed, the public has a strong interest in such matters, and "has a right to monitor the activities of government agencies and the courts." Costa, 955 F. Supp. at 1190. "Such access safeguards the citizen's desire to keep a watchful eye on the workings of public agencies." United States ex rel. Littlewood v. King Pharm., Inc., 806 F. Supp. 2d 833,

13

836 (D. Md. 2011) (quotation marks omitted) (quoting Nixon v. Warner Commcn's, Inc., 425 U.S. 589, 598 (1978)).

Courts considering requests to keep certain documents sealed have, in general, lifted the seal on the entire record except for specific documents that: "(1) reveal confidential investigative methods or techniques; (2) jeopardize an ongoing investigation; or (3) harm non-parties." Lee, 2006 WL 305966, at *2 (citations omitted). Indeed, the court in Lee did not impose the seal on the Government's extension requests because such documents were "highly general" and there was no showing that unsealing the documents "would have a chilling effect on the future content of such requests." Id. at *3; see also Littlewood, 806 F. Supp. at 844 (lifting the seal on extension requests which did not contain "confidential investigative methodology" or "information that would jeopardize an ongoing investigation"). To the extent that the reputational harm to a defendant is a relevant factor, one court has reasoned that a defendant in such a position "would not be particularly different from any other defendant that believes it was unfairly accused or sued," and "that alone is not a basis for secrecy." Littlewood, 806 F. Supp. 2d at 844 (citation omitted).

**B. Analysis**

The Court finds that no good cause exists for re-imposing the seal, wholly or partially.

14

### 1. The Existence of the Criminal Investigation

The fact that the Government conducted a criminal investigation does not support a finding of good cause to seal the case or the extension requests. The investigation has concluded, Pentec was absolved, and no criminal charges were brought against Pentec. The Government has not pointed to a specific, concrete harm that has happened or is likely to happen to Pentec if the now closed criminal investigation is disclosed. In fact, the information about the existence of a now-closed and non-actioned criminal investigation has been in the public domain for thirty days with no apparent consequences.

The best that Pentec has articulated is that a "senior lender" may back out of financing Pentec if it learns that Pentec has been the subject of a criminal investigation. In the absence of any evidence that this is likely to happen, this concern is sheer speculation.[10]

### 2. Brasher's Concerns

As with Pentec, Brasher can only speculate as to unspecified harms. Brasher has identified no particular harm that has or is likely to happen. The fact that it is now known that Brasher made the allegations is unpersuasive for at least three reasons. First, Brasher is no longer employed by Pentec.

---

[10] In any event, the existence of a closed criminal investigation involving a borrower is a matter that is likely material to creditors and would need to be disclosed.

15

Second, as must happen at some point in every qui tam case, the relator's identity is eventually revealed, and the statute contemplates that such information would be made public after sixty days. Third, the reputational and other harms are vague and unsupported by evidence. In short, there is no evidence that Brasher has or is likely to suffer harm.

### 3. The Effect on Settlement Negotiations

The Government, supported by Brasher and Pentec, voiced concerns about the effect of unsealing the case on the ongoing settlement negotiations. But settlement negotiations per se cannot become a justification for keeping a case under seal. The purpose of the sealing provision is not to allow the Government to prosecute a civil action entirely under seal and then to present a settlement as a fait accompli to the Court and the general public. On the contrary, the sealing provision is not intended to allow the Government to negotiate a settlement under the cloak of secrecy but rather to investigate the allegations and then to determine whether it is electing to intervene. That a settlement may result is incidental to the central purpose of the statute.

### 4. "Policy" and Past Practices on Extension Requests

At oral argument, the Government made reference to precedent that supported its request for keeping the extension requests under seal, but cited neither case law nor the

congressional record in support. On the other hand, as pointed out above, courts have grown increasingly impatient with the Government's repeated requests for extension of the seal in qui tam actions. See supra Section III.A.

The Government also referred, without specifics, to certain conduct that is the "practice" among some courts to allow such sealing and to routinely grant unlimited extensions without much oversight. If true, this Court declines to follow this path. The False Claims statute states that "[t]he Government may, **for good cause shown**, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera." 31 U.S.C. § 3730(b)(3) (emphasis added). Clearly, the statute does not condone the granting of extension requests routinely or that submissions in support thereof remain forever sealed.

Finally, the Government has failed to show that any of the two main areas of concern in unsealing the extension requests are implicated in this case. First, the Government has not identified any sensitive investigational techniques that are discussed in the extension requests. Second, there is no ongoing investigation that could be jeopardized. In light of the foregoing, the Court concludes that there is no good cause to seal the requests.

17

**IV. CONCLUSION**

The parties have requested the Court to reseal the matter. While the Court has the power to keep matters under seal in appropriate circumstances,[11] the important decision to keep matters under seal must be predicated on a finding for good cause. None exists in this case.

The Court's previous reasoning for denying an extension and then unsealing the case is still valid. In a case filed five years ago and after ten extensions, even with nearly sixteen months on suspense, the Government seeks "one more," and "one more" again, but without support to show good cause. Under the circumstances, the Court will deny the motion for reconsideration of its decision to lift the seal. Further, because the Government has still not decided whether to elect to intervene in this case, the Court will require the Government to make its decision and notify the Court within thirty days. An appropriate Order accompanies this memorandum.

---

[11] See supra note 1.